```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | NO. 1:06-CR-00111 |
|  | : |  |
| v. | : | **OPINION AND ORDER** |
|  | : |  |
| STEVEN E. WARSHAK, et al. | : |  |

This matter is before the Court on three motions, first, Defendant Paul Kellogg's Motion for a Separate Trial (doc. 167), the government's Response in Opposition (doc. 190), and Defendant Kellogg's Reply (doc. 207); second, the government's Motion In Limine for a Determination that Records Qualify as Business Records Under Federal Rule of Evidence 803(6) (doc. 168), and Defendants' Opposition (doc. 195); and third, Defendants' Motion to Inspect Jury Selection Records Pursuant to the Jury Selection and Service Act (doc. 169), the government's Response (doc. 189), and Defendants' Reply (doc. 206).  For the reasons herein, the Court DENIES Defendant Kellogg's Motion for Separate Trial, but GRANTS Defendant Kellogg the opportunity to submit to the Court any documents in camera that unambiguously support the argument in his motion.  The Court CONDITIONALLY GRANTS the government's Motion In Limine, so as to GRANT Defendants until December 14, 2007, to review the records in question and to raise any specific objections or to notify the government whether they will stipulate as to their

admission.  Finally, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Inspect Jury Selection Records.

**I. Defendant Kellogg's Motion for a Separate Trial**

Defendant Kellogg brings his motion for a separate trial premised on the theory that his role as house counsel for Defendant Berkeley Premium Nutraceuticals ("Berkeley"), its officers, directors, and employees, places him in a dilemma (doc. 167).  In Kellogg's view, his ethical duties of protecting his clients' attorney client privilege conflicts with his Sixth Amendment right to offer in his personal defense documents that are otherwise protected by his clients' privilege (Id.).  Kellogg argues the only rational, fair, and pragmatic way to resolve the dilemma is to defer his trial until after that of his clients, so that any disclosure of privileged materials can be made at a time when less prejudice will result to those for whom the privilege exists (Id.). Kellogg further argues that he is at risk of unfair prejudice due to the large quantity of counts and defendants in the case (Id.). Kellogg argues he is charged with only nine of the 112 counts, and that he joined Berkeley as in-house counsel in August 2003, over two years after the alleged conspiracies began with the remaining co-Defendants (Id.).  In Kellogg's view, serious risks exist that could prevent a jury from making a reliable judgment as to his guilt or innocence, and as such, the Court should sever his trial (Id. citing United States v. Locascio, 357 F.Supp.2d 536 (E.D. N.Y.

2

2004)(severance granted where prejudice likely to result from a joint trial of large number of defendants), United States v. Mardian, 546 F.2d 973 (D.C. Cir. 1976)).

The government responds that Kellogg's motion should be denied, that joinder was appropriate in this case, and that there is no violation of Defendants' attorney client privilege as the allegedly privileged documents are not subject to the privilege, but rather fall under the crime-fraud exception (doc. 190). The government submits that the Court, after an in camera review of the allegedly privileged documents, will conclude as much, and has the discretion to offer limiting instructions or other less drastic measures in place of severance (Id. citing Fed. R. Crim. P. 14(b)). Citing to Zafiro v. United States, 506 U.S. 534, 538-539 (1993), the government argues that the co-Defendants' mutually antagonistic defenses are not prejudicial per se (Id.). Finally, the government contends that Kellogg's acquittal does not depend on his co-Defendants' conviction, as such, there is not need for separate trials (Id.).

Kellogg replies that the government's motion is based on three false premises, 1) that no privilege exists, 2) that Kellogg is free to waive Berkeley's privilege, and 3) that an in camera review would negate the need for a separate trial (doc. 207). Kellogg challenges the government's assertion that it possesses and intends to use documents and communications involving or emanating

3

from Kellogg as contradictory to its commitment to not use any emails submitted for taint review (Id.).  Kellogg further argues that there are documents that were found privileged in the taint review process which are exculpatory to him (Id.).  Kellogg contends he would seek to enter these emails into evidence but for his ethical obligation to protect the attorney client privilege (Id.).

Having reviewed this matter, the Court does not find an adequate basis to grant Defendant Kellogg a separate trial.  The standard for severance requires more.  "When Defendants properly have been joined under Rule 8(b), a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro, 508 U.S. at 539.  The Court finds no such serious risk present here.

First, the government has indicated that any documents submitted for taint review are not a part of its case (doc. 203, fn. 4).  As such, it would appear that Kellogg's concerns are hypothetical and overblown.  With no clear existence of privileged evidence that would work in Kellogg's favor while working against his co-Defendants, the Court is unwilling to sever the trial.  The Court is convinced that should documents exist that reflect the charges in the Indictment, such documents are subject to the crime-

4

fraud exception and are not subject to privilege. As such, Kellogg would be free to use them in his defense.

Zafiro clearly supports the proposition that even where co-Defendants have mutually antagonistic defenses, a joint trial would not necessarily result in legally cognizable prejudice. 506 U.S. 534. The Court is willing to conduct an in camera review of documents Kellogg argues he is precluded from using due to privilege. Should it appear to the Court after such a review that there is a specific risk of prejudice, the Court would likely consider the use of limiting instructions. Id. at 539.

The Court is of the mind that it is in the interests of all the parties to complete this matter in one proceeding. The Court has the full confidence that the jury will be able to allocate the respective criminal liability of each Defendant, if any, and will be able to take into consideration the amount of time that Kellogg was working for Berkeley in assessing the degree of his involvement, if any, with the charges in the Indictment.

For these reasons, the Court rejects Kellogg's position, but will review Kellogg's submission in camera of documents he desires to submit into evidence but that he claims he is precluded from doing so by doctrines of privilege.

**II. The Government's Motion In Limine for a Determination that Records Qualify as Business Records Under Federal Rule of Evidence 803(6)**

The government brings its liminal motion pursuant to

5

Federal Rule of Evidence 104, seeking a preliminary determination of admissibility of various records of Defendants' financial accounts, which it states are relevant to proof of various counts of the Indictment, including money laundering (doc. 168).  The government submits that it seeks a preliminary determination of admissibility so as to permit the efficient progress of the trial without the need to present at least a dozen custodian witnesses to authenticate the records (Id.).  The government attached certifications to its motion from various custodians of Defendants' records showing the records were kept in the ordinary course of business (Id.).  The government contends that the records are therefore admissible as business records under Federal Rule of Evidence 803(6), and that no further extrinsic evidence of authenticity is required (Id.).

The Defendants oppose the government's motion, stating they continue to review the records, and they will notify the government no later than December 14, 2007 regarding whether they will stipulate as to their admission (doc. 195).  From the Defendants' view, therefore, the government would still have adequate time to pursue their liminal motion or to subpoena the record keepers (Id.).

Having reviewed this matter, the Court finds the government's motion well-taken, but agrees that Defendants should have time to scrutinize the records and to decide whether they will

stipulate as to their admission. The Court therefore CONDITIONALLY GRANTS the government's motion pending Defendants' review of the records. Should the Defendants fail to raise any specific objection on or before December 14, 2007, the Court shall consider the records admissible as business records under F.R.E. 803(b).

**III. Defendants' Motion to Inspect Jury Selection Records**

Defendants move the Court pursuant to 28 U.S.C. § 1867(f), the Jury Selection and Service Act, to allow them to inspect additional records or papers used by the Jury Administrator and Clerk in connection with the jury selection process that have not been previously disclosed (doc. 169). Defendants state they require numerous additional documents so as to determine whether a challenge of the jury selection procedures of this District is warranted (Id.). Defendants seek thirteen categories of documents regarding records and demographics related to juror selection, as follows:

> 1) The list of all persons taken from source lists and placed in the master wheel, along with demographic information.
>
> 2) The list of all persons taken from the master wheel and placed in the qualified juror wheel, along with their questionnaires and demographic information.
>
> 3) Records of all persons taken from the master wheel and determined not to be qualified for jury duty, along with all demographic information.
>
> 4) Records of all persons who were selected from the master wheel to receive questionnaires, but did not respond, and documents reflecting any efforts to obtain responses.

5) Records of all persons who were selected from the master wheel to receive questionnaires whose questionnaires were returned as undeliverable, and documents reflecting any efforts to resend the questionnaires.

6) Documents reflecting any investigation or study into the rate of response or reasons for lack of response to the questionnaires sent out to individuals chosen from the master wheel or suggestions as to how to improve response or alternative sources of names for the master wheel.

7) Records, including demographics of all jury pools and grand jury pools, from 2004 through 2006.

8) Records of all persons who failed to respond to summonses for specific duty, including demographic information.

9) Records of all persons who requested relief, exemption, or deferment of jury duty, including demographic information and all documents related to the decision to grant or deny those requests.

10) Records and documentation of jury administrator's policy for re-summonsing persons who have been granted temporary deferrals and the percentage of deferred jurors that have been re-summoned.

11) All policies, rules, regulations, procedures, manuals, or other written instructions created or maintained by the Clerk's Office for selecting and compiling jury wheels and juries.

12) All audits, evaluations, or assessments of the current plan and/or jury wheels.

13) The questionnaires of all jurors who were summoned to appear on the grand jury that indicted the Defendants, but who were ultimately not chosen.

(Id.).  Defendants indicate they have retained an expert in quantitative analysis to assist them in analyzing the records they seek (Id.).

The government responds that while it respects Defendants' right to make such inspections, as the right of access

to grand jury selection records is unqualified, it believes Defendants' requests are overbroad, unnecessary, and could needlessly delay these proceedings (doc. 189, citing Test v. United States, 420 U.S. 28, 30 (1975)(per curiam)).  The government specifically requests the Court deny Defendants access to the document categories enumerated 1, 3, 4, 5, and 6, as such categories relate to stages in the selection process prior to the entry of prospective jurors into the qualified jury wheel, and are not relevant to the ultimate selection of grand jurors (Id.).

Defendants reply they are not seeking to delay this matter, but seek the records in categories 1, 3, 4, 5, and 6 so as to compare the racial makeup of the master and qualified jury wheels with the racial makeup of the Southern District of Ohio (doc. 206).  Defendants argue that disclosure of such information will show whether the jury administrator properly followed procedures on random selection from official voter registration lists, and could assist them in challenging the implementation of the Court's jury plan (Id.).

Having reviewed this matter, the Court concludes that with the exception of category 6, which it finds overbroad and unnecessary, the interests of justice mandate the disclosure to Defendants of all the remaining twelve categories of documents they seek.  However, the Court will tolerate no delay in the trial of this matter as the result of this request.  The Court directs the

9

Clerk, therefore, to comply with this Order forthwith, and to furnish all counsel with the requested materials in categories 1-5 and 7-13.

## IV. Conclusion

For the reasons indicated herein, the Court DENIES Defendant Kellogg's Motion for Separate Trial (doc. 167), but GRANTS Defendant Kellogg the opportunity to submit to the Court any documents <u>in camera</u> that support the argument in his motion. The Court CONDITIONALLY GRANTS the government's Motion in Limine (doc. 168), pending Defendants' review of the financial records. Should the Defendants fail to raise any specific objection on or before December 14, 2007, the Court shall consider the records admissible as business records under F.R.E. 803(b). Finally, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Inspect Jury Selection Records (doc. 169), and DIRECTS the Clerk to make available to the parties FORTHWITH the twelve requested categories of information in this Order, with the exception of the category enumerated six.

Dated: November 13, 2007     <u>/s/ S. Arthur Spiegel</u>
                             S. Arthur Spiegel
                             United States Senior District Judge