```
                UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF OHIO
                     WESTERN DIVISION
```

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 1:06-CR-00111 |
|  | : |  |
| v. | : | **OPINION AND ORDER** |
|  | : |  |
| STEVEN E. WARSHAK, et al. | : |  |

This matter is before the Court on two motions, first, the government's Motion to Amend the Preliminary Order of Forfeiture to Include Proceeds and Money Laundering Money Judgments and Substitute Assets (doc. 488), Defendants Berkeley, TCI Media, and Steven Warshak's Response in Opposition (doc. 543), Defendant Paul Kellogg's Response (doc. 544), Defendant Harriet Warshak's Response (doc. 545), and the government's Reply (doc. 553). Also before the Court is Defendant Paul Kellogg's Motion for an Evidentiary Hearing with Regards to Sentencing Issues (doc. 561), and the government's Response (doc. 562). For the reasons indicated herein, the Court GRANTS both motions.

**I.  The Government's Motion**

On March 7, 2008, the Court entered a Preliminary Order of Forfeiture in this matter as to property found by the jury to have a nexus to the offenses under both a proceeds theory of forfeiture and a money laundering theory of forfeiture (doc. 418). In the instant motion, citing Fed. R. Crim. P. 32.2 and a host of

case law precedent, the government seeks to amend such Order so as to specifically hold Defendants jointly and severally liable for $459,540,000.00 in a proceeds money judgment and for $44,876,781.68 in a money laundering judgment (doc. 488). The government arrives at the former figure by citing to an income statement and tax returns totaling the gross sales for Warshak's companies during the period of the Indictment (Id.). As for the latter figure, the government offers a money laundering transaction spreadsheet showing a total of $123,063,156.30 in laundered funds, which it adjusts downward to $44,876,781.68 so as to avoid double counting (Id.). The government further seeks to include certain property of the Defendants as substitute property to satisfy the money judgments, pursuant to Fed. R. Crim. P. 32.2(e) (Id.). The government identifies five bank accounts, four investment accounts, two accounts receivable, and other property, which it seeks to preserve for forfeiture (Id.).

**II. Defendants' Objections**

    **A. Berkeley, TCI Media, and Steven Warshak**

Defendants Berkeley, TCI Media, and Steven Warshak oppose the government's motion, arguing that it is premature due to the Court's May 14, 2008 announcement that it would make no further decisions relating to forfeiture until the time of sentencing (doc. 543). Defendants contend it is inappropriate to grant such an amendment until the Court makes a determination of the appropriate

amount of forfeitures to be ordered (Id.).  Defendants argue the government has failed to prove its entitlement to the forfeiture of assets, and instead merely advances the faulty proposition that all of Berkeley's revenues during the period of the Indictment were the product of the fraudulent conduct charged (Id.).

Defendants argue the Sixth Circuit has not held that forfeiture money judgments are permissible in criminal cases, and further argue that Fed. R. Crim. P. 32.2 does not authorize such judgments (Id.).  Citing United States v. Croce, 334 F.Supp.2d 781 (E.D. Pa), amended on reconsideration, 345 F.Supp.2d 492 (E.D. Pa. 2004), rev'd 209 Fed. Appx. 208 (3rd Cir. 2006), and United States v. Day, 416 F.Supp.2d 79 (D.D.C. 2006), rev'd 2008 WL 1988789 (D.C. Cir. May 9, 2008), Defendants argue the Court should find the forfeiture money judgments are not authorized under 18 U.S.C. § 982 (Id.).  Defendants further argue the Advisory Committee Notes to Rule 32.2(b)(1) and (c)(1) strongly suggest that it is in question whether courts have the power to order forfeiture money judgments (Id.).

Defendants next argue they have made extensive submissions to the Court refuting the government's position that all of Berkeley's revenues were derived from fraud (Id., incorporating by reference docs. 481, 542).  Even should some portion of Berkeley's revenues be determined to be the product of fraud, Defendants argue, they should be entitled to credit for

3

refunds they gave to more than 400,000 customers, for the amount they have paid to settle civil litigation against Berkeley, for the amounts they incurred in shipping costs and for the costs of the products themselves (doc. 543).  As for the money laundering money judgment, Defendants similarly argue entry of judgment is premature, and incorporate arguments that commingling of funds in this case did not make them any more difficult to trace (Id. citing doc. 481).

The question of substitute assets is similarly premature, argue Defendants, because unless the amount of the ultimate forfeiture order exceeds the value of the assets subject to the preliminary order of forfeiture, the substitute assets will not come into play (Id.).  Defendants further argue the government cannot meet its burden of proof under 18 U.S.C. § 853(p) for the forfeiture of substitute assets (Id.).  As such, Defendants conclude the Court should deny or hold such request in abeyance pending a determination of the amount to be forfeited, and the government has met its burden of proof (Id.).

**B.  Paul Kellogg**

Defendant Paul Kellogg argues the Court should at least deny the government's motion to the extent that it seeks to impose personal liability against him (doc. 544).  Kellogg contends that he was only named in the forfeiture proceedings in his representative capacity as trustee for the 2004 Carri E. Warshak

4

QTIP Trust and the 2004 Warshak Family Gift Trust, in neither of which he holds any pecuniary interest (Id.).  Kellogg cites to the transcript of a sidebar discussion during the February 25, 2008 forfeiture proceedings in which the U.S. Attorney stated he did not believe Kellogg faced any exposure from his role as trustee for forfeiting his own assets (Id.).  Now, in contrast, Kellogg argues, the government seeks joint and several liability against him such that he would bear personal exposure for the money judgments (Id.).  Kellogg argues he reasonably relied on the statement of the U.S. Attorney and did not participate in the forfeiture proceedings such that the government should be estopped from bearing individual, personal liability against him (Id.).  Finally, Kellogg argues that should the trusts be forfeited, his liability would be extinguished (Id.).

### C.  Harriet Warsak

Harriet Warshak similarly argues that the government's motion is premature, and that holding her jointly and severally liable for more than $450 million or even $44 million constitutes a punishment grossly disproportional to the gravity of her offense (doc. 545).  Harriet Warshak argues she did not reap a benefit anywhere near such amounts from the scheme, and now the government seeks to strip her of every asset she owns, even assets left to her by her deceased husband and assets she earned prior to any of the events in this case (Id.).

5

**III.  The Government's Reply**

The government replies that its motion is ripe for decision, and that the requested amendment would allow it to take the steps necessary to conclude the forfeiture proceeding and resolve third party rights (doc. 553).  In the government's view, such amendment would simplify what could prove to be a hotly contested sentencing hearing (Id.).

The United States next argues the Court is within its authority to issue forfeiture money judgments, and that Defendants err in suggesting the Advisory Committee has struggled with the question (Id.).  Quoting the Advisory Committee Notes to Fed. R. Crim. P. 32.2, the government signals the Committee stated "the court must determine the amount of money that the defendant should be ordered to forfeit," language that shows no question that the Court is within its authority to order forfeiture in the form of a money judgment (Id.).  The government argues Defendants' reliance on the Croce and Day decisions is misplaced, as both were reversed on appeal, and the Court should instead follow the majority of courts in concluding forfeiture money judgments are authorized under 18 U.S.C. § 922 (Id.).

Next, the government contends Defendants have a continuing obligation to forfeit money derived from or used to commit their criminal offenses, whether they retained the money or not (Id.).  Accordingly, it argues, Harriet Warshak must forfeit

6

the one million dollar "gift" her Son gave her in its entirety (Id.).  It further argues that it established that Defendants were engaged in a massive fraud scheme that permeated virtually all aspects of Berkeley's operations, thus justifying the money judgments the government seeks (Id.).

As for substitute assets, the government contends forfeiture is mandatory where directly forfeitable property is unavailable as a result of an act or omission of the Defendant (Id. citing 21 U.S.C. § 853(p)(2).  Because federal law does not insulate any property from forfeiture as a substitute asset, the government asserts it makes no difference whether Defendants obtained the property before involvement with the scheme to defraud (Id. citing United States v. Bollin, 264 F.3d 391, 423 (4th Cir. 2001)).

Regarding Defendants' contention that the United States has not met its burden of proof under Section 853(p) for the forfeiture of substitute assets, the government responds that such section does not require the submission of proof in any particular form (Id.).  In any event, the government asks the Court to consider that Defendants have represented that Berkeley has had barely enough money to maintain its operations, and Defendant Warshak represented that he did not have more money but put it all back into the company to keep it running (Id.).  Consequently, argues the government, the forfeiture of substitute assets in

7

advance of sentencing is not premature in this case (Id.).

As for Paul Kellogg and Harriet Warshak's arguments on joint and several liability, the government argues all Defendants are liable to forfeit the total amount obtained as criminal proceeds or the amount involved in a money laundering offense (Id. citing United States v. Corrado, 227 F.3d 543, 554-55 (6th Cir. 2000)). The government further argues that in order to challenge the forfeiture as excessive under the Eighth Amendment, the burden is on Defendants to show the forfeiture of the property in its entirety is grossly disproportional to the gravity of the offense (Id. citing United States v. Ahmed, 213 F.3d 805 (4th Cir. 2000). Here, argues the government, forfeiture is mandatory because the forfeiture of proceeds is not disproportional (Id. citing United States v. Four Continguous Parcels, 191 F.3d 461 (6th Cir. 1991)). As for the money laundering forfeiture, the government argues the amount it requests is half the amount of the available maximum fine and therefore would not violate the Eighth Amendment (Id. incorporating by reference doc. 551). Moreover, should the Court consider the sophistication of the offense here, the scope and duration of the scheme, and the length of the potential prison terms, the forfeiture in this case would not be excessive (Id.).

The government argues that Kellogg's reliance on the sidebar discussion in the forfeiture trial is misplaced because such conversation only applied to assets for which he was a trustee

8

(Id.).  In the government's view, its request for a money judgment against Kellogg has nothing to do with the forfeiture hearing or his status as a trustee, but rather relates to his convictions for conspiracy to commit money laundering and for substantive money laundering (Id.).

**IV.  Discussion**

The Court does not find the government's motion premature, and rejects Defendants' position that the Court lacks authority to order forfeiture in the form of a money judgment. Defendants rely on an incorrect interpretation of the Advisory Committee Notes as well as on case law reversed on appeal.  The Court is well within its authority to enter a preliminary order of forfeiture before sentencing.  United States v. Yeje-Cabrera, 430 F.3d 1, 15 (1st Cir. 2005).

At the May 14, 2008 hearing the Court sought the assistance from the parties in arriving at an appropriate forfeiture judgment in this case. At the conclusion of the hearing the Court gave the Defendants the opportunity to brief the issue of forfeiture so as to justify a forfeiture in this matter less than one hundred percent.  In response Defendants proffered arguments they already presented to the jury, as well as "mitigating" figures that taken together would add up to more than the amount the government seeks in forfeiture (doc. 542).   Defendants also attached a four-page exhibit showing "customer surveys" claiming

9

high satisfaction rates with their products.

Defendants appear to attempt a continuation of the litigation of the case. The Court is unpersuaded by Defendants' response, which it does not find helpful. The Court has reviewed Defendants' position based on Better Business Bureau complaints from December 2003 through July 2005, and finds dubious the calculation arriving at $194,800 in total losses based on 2,784 complaints (doc. 481). The Court is convinced that the particular nature of Defendants' business undoubtedly resulted in a large number of embarrassed customers who never lodged any complaints. Moreover, the class action in the Montgomery County Court of Common Pleas involves 165,450 class claimant victims suffering a loss of $21,764,000, a figure that far outstrips those proffered by Defendants.[1]

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 981(a)(2)(A), defines "proceeds" in cases involving unlawful activities as "property of any kind obtained directly or indirectly, as the result of the commission of the offense. . .and is not limited to the net gain or profit realized from the offense." Under such definition, the Court is not compelled to attempt to credit Defendants with costs they incurred in operating their business.

---

[1] June 9, 2008 letter of Jeffrey Goldberg, Esq., to U.S. Attorney and to U.S. Probation.

At trial, the jury found a massive consumer fraud scheme, and saw evidence that the heart of the Warshak companies' business model was a "continuity" program that Defendants foisted on consumers without disclosure.  The Court saw adequate evidence to support the conclusion that the various schemes of Defendants, including repeated "dinging" of credit cards, manipulation of chargeback ratios, false advertising and sales scripts, all taken together show the Defendants generated huge income in a brief period of time.  The fact that Defendants now fail in assisting the Court in arriving at forfeiture figures tied to the various schemes affirms, in the Court's view, the government's position that the entire operation was permeated with fraud, and that income generated from fraud cycled through Berkeley operations during the entire period of the Indictment.  As such the Court finds the government has met its burden of proof as to the money judgments it seeks.

The Court finds well-taken the government's argument that Defendants have a continuing obligation to forfeit money derived from or used to commit their criminal offenses, whether they retained the money or not.   As such, keeping in mind the statements in the record that show assets have dissipated, the Court is compelled to order the forfeiture of substitute assets, to the extent that Defendants are unable to satisfy the forfeiture judgment.  21 U.S.C. § 853(p)(2).  The Court rejects Defendants'

11

position that the government has failed to meet its burden of proof as to substitute assets.

The Court further finds that joint and several liability is required in this case, consistent with United States v. Corrado, 227 F.3d 543, 554-55 (6th Cir. 2000).  The Court does not find persuasive Paul Kellogg's argument that the government should be estopped from holding him jointly and severally liable.  The jury found Kellogg guilty of conspiracy to commit money laundering and substantive money laundering, verdicts that render Kellogg liable for the amount involved in the offenses.  18 U.S.C. § 982(a)(1).  The Court similarly rejects Harriet Warshak's argument that the forfeiture money judgments the government seeks against her are grossly disproportional to the gravity of her offenses, so as to violate the Excessive Fines Clause of the Eighth Amendment.  Taking into account the sophistication of the offenses, the scope and duration of the scheme, and the length of the potential prison terms, the money judgment forfeiture does not qualify as excessive.  Under Sixth Circuit precedent, when the amount to be forfeited amounts to less than the maximum statutory fine for the underlying criminal offense, no Eighth Amendment concerns are triggered.  United States v. Hill, 167 F.3d 1055, 1072 (6th Cir. 1999).  In this case, Defendants face potential fines of up to $823,463,668 for the charges in Counts 1-13, 15, 23, 27, 29, and $89,753,563.20 for the

12

charges in Counts 30-98 and 102-108.[2]  Consequently the Court has no compunction about entering a preliminary order of forfeiture in the requested amounts, which are substantially below the available fines.

**V. Defendant Paul Kellogg's Motion**

Defendant Kellogg moves the Court for an evidentiary hearing concerning his objections to the portions of the Final Presentence Investigation Report bearing specifically on the recommendations for upward departures based on the use of special skills and for sophisticated money laundering (doc. 561). Defendant anticipates calling only one witness, Chris Sega, and introducing a limited number of documents (Id.).  The government expresses no objection, but requests that Defendant submit in advance of any such hearing an affidavit of the witness so as to provide the government fair notice of the testimony (doc. 562).

The Court finds Kellogg's motion and the government's Response both well-taken.  Accordingly, the Court grants such motion with the condition that Defendant file in advance of the

---

[2] The Court notes that the forfeiture allegation in the Indictment amounted to $100 million.  Despite Defendants' arguments to the contrary, the government was within its rights to increase the amount it seeks in forfeiture based on its discovery of new information.  United States v. Brown, No. 04-CR-159(NGG), 2006 U.S. Dist. LEXIS 48278, *16-18 (E.D.N.Y. 2006)(Indictment does not need to list item by item all the property the government seeks in forfeiture, but rather must place Defendant on notice that the government will be seeking forfeiture pursuant to the appropriate statute).

hearing an affidavit of any witness he intends to use.

**VI. Conclusion**

Having reviewed these matters, the Court finds both pending motions well-taken.  Accordingly, the Court GRANTS the government's Motion to Amend the Preliminary Order of Forfeiture to Include Proceeds and Money Laundering Money Judgments and Substitute Assets (doc. 488), such that the Defendants involved in the mail, wire, and bank fraud conspiracy are jointly and severally liable for $459,540,000.00 in a proceeds money judgment and Defendants Steven Warshak, Harriet Warshak, and Paul Kellogg are jointly and severally liable for $44,876,781.68 in a money laundering judgment.  Defendants further forfeit right, title, and interest to substitute property to the extent that directly forfeitable property does not satisfy the money judgments.  The Court DIRECTS the government to prepare and file forthwith such an amended Preliminary Order, consistent with this decision, for the Court's signature.  The Court further ORDERS the government to provide the requisite public notice of the amended Preliminary Order so as to protect the interests of any third parties.  21 U.S.C. § 853(n)(1).

The Court further GRANTS Defendant Paul Kellogg's Motion for an Evidentiary Hearing with Regards to Sentencing Issues (doc. 561), and SETS such hearing for Tuesday, August 26, 2008, at 9:30 A.M.  Defendant shall file in advance of such hearing an affidavit

of any witness he intends to use at such hearing.  Finally, taking into account that sentencing in this matter will take place in late August, the Court ORDERS that any sentencing memoranda be filed by August 1, 2008.

        SO ORDERED.

Dated: July 8, 2008                  /s/ S. Arthur Spiegel
                                        S. Arthur Spiegel
                                        United States Senior District Judge